United States District Court
Southern District of Texas
**ENTERED**
May 12, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MANUEL FURLOS NARANJO, CARLOS EDUARDO GUEVARA FUENTES,** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **Civil Action No. 4:22-CV-01255** |
| **SCOTTFORD CUSTOM HOME DESIGNERS AND CONSULTANTS LLC, BRIAN SCOTT, AND MICHELLE L. BASSETT,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Manuel Furlos Naranjo and Carlos Eduardo Guevara Fuentes (the "Plaintiffs") were employed by Scottford Custom Home Designers and Consultants LLC ("Scottford") and its owners, Brian Scott and Michelle L. Bassett (the "Defendants"). The Plaintiffs allege that they performed construction work for the Defendants, who willfully violated the Fair Labor Standards Act (the "FLSA") by failing to pay them overtime wages. They brought suit against the Defendants, who have failed to answer or otherwise defend this action. Pending before the Court is the Plaintiffs' Motion for Default Judgment Pursuant to Federal Rule of Civil Procedure 55. (Dkt. No. 37). After careful review, the Court **GRANTS** the Motion.

## I. BACKGROUND

Naranjo and Fuentes are both residents of Sugar Land, Texas who were employed by the Defendants.[1] (Dkt. No. 28 at 1, ¶ 2). Scottford is a business located, headquartered, and conducting business in Houston, Texas, and both Scott and Bassett are Houston residents. (*Id*. at 1, ¶ 3–5). Scott and Bassett are both owners of Scottford, and Scott is the President while Bassett is the ultimate boss. (*Id*. at 1, ¶ 4–5). Both Scott and Bassett are supervise employees. (*Id*.) The Plaintiffs each were employed by Scottford to perform construction work. (*Id*. at 2–4, ¶ 11, 15, 26). The Plaintiffs have sued the Defendants, alleging that they were regularly required to work in excess of forty hours per week, and they were not paid overtime. (*Id*. at 3–4, ¶¶ 20–22, 31–33). The Plaintiffs claim that they are covered by the FLSA since they were paid a fixed rate on a daily basis, and these wages were not based on the number of jobs performed or completed, nor the quality of their performance. (*Id*. at 3–4, ¶ 17–18, 28–29). The Plaintiffs seek unpaid overtime, liquidated damages and reasonable and necessary attorney's fees. (*Id*. at 3–4, ¶ 23, 34).

This case was filed on April 20, 2022. (Dkt. No. 1). After multiple unsuccessful attempts to conventionally serve the Defendants under the Federal Rules of Civil Procedure, Judge Lynn Hughes approved alternative service by mail.[2] (Dkt. No. 9). After

---

1 By defaulting, the Defendants admit the Plaintiffs' well-pleaded facts. *Nishimatsu Constr. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citation omitted).

2 In their Motion for Alternative Service, the Plaintiffs elaborated on the difficulties with service. *See* (Dkt. No. 7). Scottford's listed business address turned out to be a UPS Store, at which a UPS associate informed the Plaintiffs that the Defendants did not have a P.O. Box at that address. (*Id.* at 3). The Plaintiffs also attempted to serve Scott at his listed residence on four separate occasions, including leaving a note at the door. (*Id.* at 4).

(continue)

the Defendants failed to answer or otherwise appear in this litigation, the Plaintiffs obtained a clerk's entry of default against all Defendants. (Dkt. No. 20). The Plaintiffs then moved for default judgment, which Judge Hughes denied without prejudice with instructions to cure certain deficiencies in their pleadings. (Dkt. No. 27). The Plaintiffs have since filed an amended complaint that ostensibly addressed those deficiencies, (Dkt. No. 28), and again obtained a clerk's entry of default against all Defendants, (Dkt. No. 35). On March 6, 2023, this action was reassigned to this Court. (Dkt. No. 40). The Court now considers the Plaintiffs' second motion for default judgment. (Dkt. No. 37).

## II. APPLICABLE LAW

### A. DEFAULT JUDGMENT

As the Fifth Circuit has explained, default judgment is appropriate after: (1) the defendant has defaulted, *i.e.*, failed to timely answer or otherwise respond to the complaint; (2) the clerk of court files an entry of default against the defendant when default is established by affidavit or otherwise; and (3) application by the plaintiff for a default judgment after the entry of default. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* Fed. R. Civ. P. 55.

Standing alone, entry of default does not necessarily mean that default judgment is appropriate. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quotations omitted) (explaining that a party "is not entitled to a default judgment as a matter of right,

---

On the Plaintiffs' motion, Judge Hughes permitted the Plaintiffs to serve the Defendants by mail at the address listed as Brian Scott's residence in accordance with Rule 4(e)(1) of the Federal Rules of Civil Procedure and Rule 106(b)(2) of the Texas Rules of Civil Procedure. (Dkt. No. 9).

even where the defendant is technically in default"). By defaulting, a defendant admits the plaintiff's well-pleaded facts. *Nishimatsu Const. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citation omitted). But courts do not treat entry of default "as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Id.* (citation omitted). Defendants are "not held to admit facts that are not well-pleaded or to admit conclusions of law," and "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id.*

The decision to grant a default judgment is within the sound discretion of the district court judge, but it is "a drastic remedy, not favored by the Federal Rules[.]" *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted). It is appropriate "only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (citation omitted). In considering whether to grant default, courts consider the *Lindsey* factors: (1) whether disputes of material fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

### B. Coverage Under The Fair Labor Standards Act

The wage and hour requirements in the FLSA apply only if a plaintiff can demonstrate either individual or enterprise coverage for interstate commerce purposes. *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)). To

establish individual coverage, the employee must be "engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 207(a)(1), which can be determined by inquiring "whether the work is so directly and vitally related to the functioning or an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated local activity." *Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010) (per curiam) (quoting *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam)). To establish enterprise coverage, the employee must work for an enterprise that either has employees engaged in commerce or in the production of goods for commerce (the "engaged-in clause"), or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person (the "handling clause"). *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 786 (5th Cir. 2020) (citing 29 U.S.C § 203(s)(1)(A)(i)). The enterprise's annual gross volume of sales made or business done must also not be less than $500,000. 29 U.S.C. § 203(s)(1)(A)(ii).

## III. DISCUSSION

The Court must evaluate whether the pleadings offer a sufficient basis for entry of default judgment and, if so, whether default would be appropriate in this case.

### A. SUFFICIENCY OF THE PLEADINGS

Having established that the Defendants are in default, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206. The Plaintiffs' original motion for default judgment, (Dkt. No. 23), was denied by Judge Hughes on the grounds that their motion had failed to plead the interstate commerce

requirement necessary for the FLSA. (Dkt. No. 27 at 1–2). This Court turns now to whether the Plaintiffs' second motion for default judgment cures that deficiency and otherwise provides an adequate basis for obtaining a default judgment.

On the interstate commerce requirement of the FLSA, the Plaintiffs assert that they "were engaged in commerce or in the production of goods for commerce." (Dkt. No. 28 at 2, ¶ 10). They further say that in performing construction work, they "used and handled tools and materials, such as solvents, hammers, nails, screwdrivers, and screws, that were moved and shipped in interstate commerce, and were produced for commerce by their manufacturers." (*Id.*). Finally, they claim to have been "engaged in the installation, use, and repair of construction goods and materials that were shipped and moved in interstate commerce and were produced for commerce by their manufacturers." (*Id.*). As to the company, the Plaintiffs claim that Scottford "has an annual dollar volume of at least $500,000.00" and "had a minimum of 10 employees." (*Id.* at 2, ¶ 9).

As discussed, enterprise coverage is one method of falling within the scope of the FLSA and can be established when an enterprise, whose annual gross volume of sales made or business done is at least $500,000, has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person (the "handling clause"). *Molina-Aranda*, 983 F.3d at 786. The Plaintiffs have sufficiently pleaded each of these requirements and therefore enjoy enterprise coverage under the handling clause. This case is similar to the facts in both *Molina-Aranda*, 983 F.3d 779, and *Hardy v. SDM Hosp., LLC*, No. 3:20-CV-03157, 2022 WL 272718 (N.D. Tex. Jan. 10,

2022) (applying *Molina-Aranda*). In *Molina-Aranda*, the employees hauled water, sand, gravel, and construction supplies both into and out of the state, and, in doing so, worked with equipment that had been moved in or been produced for commerce. 983 F.3d at 786. The Fifth Circuit explained that, in the "construction and trucking work" at issue, "[i]t is . . . plausible that some or all of these items had travelled interstate at some point in their life cycle . . . [and] it does not stretch the definition of plausible for Plaintiffs to allege that at least some of the raw materials and machinery that they handled came from beyond Texas's borders." *Id*. at 787 (cleaned up). Similarly in *Hardy*, the plaintiff, who worked as a cook at a bar and grill, "ha[d] adequately alleged enterprise coverage via his allegations that he . . . handled general office equipment, such as telephones and computers, in addition to the types of machinery and equipment that would typically be found in a restaurant and plausibly could have been moved in or produced for interstate commerce." *Hardy,* 2022 WL 272718, at*4 (citation omitted). Likewise, the Plaintiffs here, by pleading that they used and handled specific materials that had been moved in interstate commerce for their job, have adequately alleged enterprise coverage.[3]

### B. WHETHER DEFAULT JUDGMENT IS APPROPRIATE

The *Lindsey* factors, considered in the aggregate, show that default judgment is appropriate under the present circumstances. *See Lindsey*, 161 F.3d at 893. No Defendant

---

[3] To be sure, the Plaintiffs need not actually prove that the interstate commerce requirement has been satisfied. Because the Defendants are in default, the complaint need only allege the requisite facts. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (explaining that to determine whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Rule 8 of the Federal Rules of Civil Procedure).

filed a responsive pleading or otherwise appeared, so no disputes of material facts exist. The Defendants' failure to defend, if allowed to continue, would only prejudice the Plaintiffs. The grounds for default have been clearly established, as the Clerk of Court has already entered default. (Dkt. No. 35). Absent any indication that the default was due to a good faith mistake or excusable neglect, the Court will not so assume. Default judgment would not be too harsh in light of the Defendants' failure to defend, and because the judgment would only award what the FLSA prescribes by statute. *See* 29 U.S.C. § 216(b). In sum, this case is a typical example of when default judgment is appropriate.

## IV. DAMAGES

The Court will first determine the applicable overtime pay calculation for workers like the Plaintiffs, as well as the appropriateness of awarding liquidated damages. The Court will then proceed to the question of whether to award attorney's fees. Finally, the Court will ascertain the total amount owed.

### A. APPLICABLE METHOD OF CALCULATING ACTUAL DAMAGES

Finding that default judgment is appropriate, the Court turns to damages. The FLSA prescribes that the standard workweek is forty hours, and employers must pay non-exempt employees no less than one-and-a-half times their regular rate for hours worked in excess of forty. 29 U.S.C. § 207(a)(1); *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013) (citation omitted). An employer who violates the FLSA "shall be liable to the employee . . . in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

While employers normally must pay overtime compensation using the one-and-a-half time multiplier for the additional hours worked, the "Fluctuating Workweek" ("FWW") method requires only one-half of the regular rate of pay. *Black*, 732 F.3d at 496. For the FWW method to apply, four conditions must be satisfied:

(1) the employee's hours must fluctuate from week to week;

(2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);

(3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and

(4) the employer and employee must share a "clear mutual understanding" that the employer will pay that fixed salary regardless of the number of hours worked.

29 C.F.R. § 778.114(a), (c). In short, the FWW "is an employment arrangement in which an employee receives a fixed weekly pay for a fluctuating work schedule with a varying number of hours worked each week." *Black*, 732 F.3d at 496. If the employee contests the applicability of the FWW method, the burden is on the employee to prove that the employer did not meet the requirements for the FWW method. *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) (citation omitted).

When the FWW applies, overtime pay is determined by dividing the fixed salary for the week by the total hours actually worked in each particular week. *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138–39 (5th Cir. 1988). Once that number is ascertained, the employee will receive an additional one-half pay for the hours worked in excess of forty hours. The rationale is that "[s]ince the employee has already received

straight time compensation for all hours worked in these weeks, only additional half-time pay is due for overtime hours." 29 C.F.R. § 778.114(b)(1). For example, if an employee was paid $700 per week and worked 70 hours, the rate would be $10 per hour. Since the employee worked 30 hours of overtime and has already been paid $10 per hour for those 30 hours, that employee would receive an additional $5 for each overtime hour worked, to the tune of $150. His final earnings under the FWW would be $850, which is the $700 plus the $150 of overtime under the FWW method.[4]

Naranjo and Fuentes claim that they have worked, "on average," 77 hours per week. (Dkt. No. 28 at 3, 4, ¶¶ 16, 27). More specifically, exhibits indicate that for both Naranjo and Fuentes, the weekly average hours for most weeks was 77, and for a few other weeks the average was 66 hours. (Dkt. No. 37-1 at 6 (Exh. A)); (Dkt. No. 37-2 at 6 (Exh. B)). They both claim to have been paid a fixed wage on a daily basis—$230 per day for Naranjo, $120 per day for Fuentes. (Dkt. No. 28 at 3, 4, ¶¶ 19, 30). On the well-pleaded facts, the FWW appears applicable. They meet the "fixed weekly pay" requirement, as a fixed daily pay is tantamount to a fixed weekly pay. As for a "fluctuating work schedule with a varying number of hours worked each week," the Plaintiffs do not plead that they worked exactly 77 hours per week; rather, they say that 77 hours was the "average," and in fact some weeks they worked an average of 66 hours, so they have sufficiently pleaded that their hours are not fixed week-to-week.

---

4 For another example, *see* 29 C.F.R. § 778.114(b).

Between the FWW and the ordinary time-and-a-half method for calculating overtime pay, the FWW, which awards only one-third of the standard calculation, is of course the less-preferred method for employees who sue for unpaid overtime. As stated earlier, if the employee contests the applicability of the FWW method, the burden is on the employee to prove that the employer did not meet the requirements for the FWW method. *Samson*, 242 F.3d at 636 (citation omitted). Here, the Plaintiffs do not contest this formula—in fact, they adopt it in their calculations. Since the facts indicate that the FWW method applies, and the Plaintiffs themselves apparently concede that their claims fall under this method, the Court adopts this method.

### B. LIQUIDATED DAMAGES

When an FLSA violation occurs, the statute provides for actual damages as well as an "additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Elsewhere in the FLSA, however, the statute provides that a court has discretion to decline to award liquidated damages if the employer can demonstrate that it acted "in good faith" and "had reasonable grounds for believing" that its actions or omissions were not in violation of the FLSA. 29 U.S.C. § 260. The burden to prove good faith and reasonable grounds is a "substantial burden" that rests on the employer. *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (citation omitted).

The Plaintiffs have requested, in addition to their claimed actual overtime payments, an additional equal amount as liquidated damages. (Dkt. No. 18 at 3, 4, ¶¶ 23, 34). They assert that the FLSA violations were due to the Defendants' "refusal" to pay overtime, and that the violations were willful. (*Id.* at 3, 4, ¶¶ 22, 33). While courts have

discretion to decline to award liquidated damages upon a finding of good faith or reasonable grounds, the Defendants, having failed to participate in this litigation, much less demonstrate good faith, have not met their "substantial burden." *Steele*, 826 F.3d at 246. Liquidated damages are therefore appropriate.

### C. ATTORNEY'S FEES

Under the FLSA, a prevailing party is entitled to an award of attorney's fees and costs of the action. *See* 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added). Since the Plaintiffs have prevailed and adequately provided evidentiary support for reasonable fees and costs, the Court accepts their proffered amount after reviewing the same. (*See* Dkt. No. 37-3 (Exh. C)).

### D. AMOUNT TO BE PAID

While the Plaintiffs have sufficiently pleaded their claims, the Court finds that the total amount of damages requested is inappropriate. District courts in the Fifth Circuit have consistently held that a plaintiff's relief on default judgment is limited to the kind sought in the pleadings. *See, e.g., D'Costa v. Abacus FoodMart Inc.*, No. 4:21-CV-04031, 2023 WL 1094019, at *5 (S.D. Tex. Jan. 26, 2023), *report and recommendation adopted*, No. 4:21-CV-04031, 2023 WL 2088424 (S.D. Tex. Feb. 13, 2023); *Gauna v. Tex. AAA Vacuum Truck & Outhouse Serv., LLC*, No. SA-16-CA-402-XR, 2016 WL 8856915, at *3 (W.D. Tex. Nov. 3, 2016). The Plaintiffs' operative complaint seeks only the Defendants' failure to pay overtime wages and does not seek wages for the final week of work. (*See* Dkt. No. 28 at

1–5). In *Gauna*, the court rejected the plaintiff's motion to recover for expenses incurred while employed because her complaint only sought damages for unpaid regular and overtime hours. 2016 WL 8856915, at *3. In *D'Costa*, a case particularly on point, the court similarly declined awarding unpaid non-overtime wages because the plaintiff had only pleaded an entitlement to unpaid overtime wages. 2023 WL 1094019, at *5.

Of the Plaintiffs, Naranjo has averred that he is owed $14,867.02 for overtime worked.[5] (Dkt. No. 37-1 at 6 (Exh. A)). Fuentes has averred that he is owed $7,757.02 for overtime worked.[6] (Dkt. No. 37-2 at 6 (Exh. B)). Accordingly, the Plaintiffs will take from the Defendants:

A. $14,867.02 in unpaid overtime for Naranjo;

B. $14,867.02 as liquidated damages for Naranjo;

C. $7,757.02 in unpaid overtime for Fuentes;

D. $7,757.02 as liquidated damages for Fuentes; and

E. $7,158.19 in attorney's fees.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Plaintiffs' Motion for Default Judgment Pursuant to Federal Rule of Civil Procedure 55, (Dkt. No. 37), against Scottford Custom Home Designers and Consultants LLC, Brian Scott, and Michelle L. Bassett, in

---

[5] This amount reflects the $14,480.18 plus $386.84 unpaid overtime from the final week. (Dkt. No. 37-1 at 6 (Exh. A)).

[6] This amount reflects the $7,555.18 plus $201.84 unpaid overtime from the final week. (Dkt. No. 37-2 at 6 (Exh. B)).

the total amount of $52,406.27. The Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

It is SO ORDERED.

Signed on May 11, 2023.

Drew B Tipton

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**